IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BILAL COLEMAN,<br><br>　　　　　　　Petitioner,<br><br>　　vs.<br><br>RON DAVIS, Acting Warden, San Quentin State Prison,[1]<br><br>　　　　　　　Respondent. | No. 2:12-cv-02179-JKS<br><br>MEMORANDUM DECISION |

　　　　Bilal Coleman, a California state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. On April 12, 2000, Coleman was convicted of voluntary manslaughter and possession of a firearm. He was later sentenced to twenty-one years in state prison. Coleman is currently in the custody of the California Department of Corrections and Rehabilitation and is incarcerated at San Quentin State Prison. In his Petition before this Court, Coleman does not contest his judgment of conviction, but rather challenges the decision of prison authorities finding him guilty of possession and distribution of a controlled substance. Respondent has answered, and Coleman has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

　　　　In the early morning of May 5, 2010, Coleman checked out a laundry bucket labeled number one, loaded the bucket with clothes, and left the bucket in the bathroom while he went to work and then to the dentist. In a Rules Violation Report ("RVR"), Correctional Officer Herrera

---

　　[1]　　Ron Davis, Acting Warden, San Quentin State Prison, is substituted for Gary Swarthout, former Warden, California State Prison, Solano. FED. R. CIV. P. 25(c). Swarthout's name was misspelled in the original caption.

stated that she searched the laundry buckets in the bathroom and found that bucket number one contained one pair of white socks, one white t-shirt, one pair of white boxer shorts and a white towel. Herrara also found a latex glove containing twelve bindles of marijuana inside bucket number one. Coleman claimed that there were two buckets labeled number one, and that the bucket containing the contraband was not the same bucket he had checked out that morning. However, as he was escorted to the Triage Treatment Area for medical and sobriety reports, he spontaneously stated that he put a t-shirt and pair of socks in the bucket that had been checked out to him. According to the sobriety report which was conducted thereafter, Coleman's pupils, speech and breath odor were normal, but he could not maintain his balance while standing on one leg. Coleman refused Officer Holyfield's order to submit to urinalysis testing, spontaneously stating, "Do I have to, I smoke weed[?]" Coleman was charged with the possession and distribution of a controlled substance.

On May 5, 2010, Officer Holyfield read Coleman his *Miranda* rights[2] prior to questioning him. Coleman invoked his right to an attorney and questioning ceased. Officer McGrath performed a field test on the bindles on May 7, 2010, and each bindle tested positive for marijuana. The bindles were then sent to an outside laboratory for further toxicology testing, and they were confirmed to contain marijuana.

On August 23, 2010, Coleman appeared before Senior Hearing Officer ("SHO") Correctional Lieutenant A.Z. Scotland for adjudication of his RVR. The SHO advised Coleman of the charges against him, the purpose of the hearing, and hearing rules and procedures. Coleman stated that he was not guilty.

---

[2]     *See Miranda v. Arizona*, 384 U.S. 436 (1966).

The SHO granted Coleman's request to call Correctional Officer Herrera, as she was the incident Reporting Employee ("RE"). However, the SHO denied Coleman's request to call Correctional Officer Burch, who was also present while Herrera searched the buckets, as well as Inmate Walker, on the ground that their statements to the Investigating Employee ("IE") had been entered into evidence. The SHO further denied Coleman's request to call inmate Evans based on "security concerns" as well as the fact that Evans' statements had also been admitted into evidence. Coleman also requested to take a lie detector test and have the clothing in the bucket "tested" and determined if it was his size.

Coleman admitted that he checked out bucket number one, but claimed at the hearing that he did not make a spontaneous statement to Sergeant Lee about the contents of the bucket. In response, the SHO called Sergeant Lee, who testified via telephone that she heard Coleman yell to an unidentified inmate that he had put a t-shirt and pair of socks in the bucket which had been checked out to him. Officer Herrera testified via telephone that she did not compare the clothes found in the bucket to the size of clothing found in Coleman's bunk area and she was not immediately aware of whether there were two buckets in the building marked as number one. She claimed that another inmate later informed her that there was a duplicate bucket.

The SHO found that Coleman used his identification to check out bucket number one and the contents of the bucket matched Coleman's spontaneous statement that the bucket contained socks and a t-shirt. The SHO further found that another inmate later reported that there was a second bucket labeled number one, but the duplicate bucket was not found in the area where Coleman's bucket had been found. The SHO further concluded that Coleman refused subsequent urinalysis testing and was not able to maintain his balance while standing on one leg

3

with his eyes closed, an indication that he was under the influence.  The SHO rejected Coleman's claim that the clothing in the bucket did not match the size of clothing found in his bunk area, noting that "[b]y past experience the SHO does not find this to be a plausible defense being that most inmates order bigger clothes out of the laundry than are their actual sizes due to most things being undersized or not enough of the inmates['] normal sizes available." Ultimately, the SHO found Coleman guilty of the possession and distribution of a controlled substance and sentenced him to a loss of credit of 180 days as well as a loss of certain visitation rights.  The SHO inadvertently reported that Coleman was not a participant in the Mental Health Services Delivery System ("MHSDS") and that Coleman was assigned a Staff Assistant ("SA") but the SA was not present during the disciplinary process.

Coleman appealed, arguing that the SHO's findings were not supported by the evidence, the SHO refused to allow him to call certain witnesses, prison officials failed to confiscate the other bucket labeled number one, the SHO did not explain hearing procedures to him, the SA did not help him prepare for the RVR hearing, and the SHO was "lying" when he stated in his disposition that the SA was not present during the hearing.  Coleman further alleged that he failed the sobriety field test because he was suffering from sciatic nerves and some sort of injury which prevented him from balancing himself on one leg, and he did not refuse a urinalysis test. Coleman requested a fair hearing and an audit of the RVR.

A Second Level of Review ("SLR") was conducted by the Warden.  Coleman was reinterviewed and the disciplinary hearing was audited.  The Warden found that Coleman was afforded a fair hearing based on the fact that: 1) an SA assisted Coleman both before and during adjudication of the RVR; 2) Coleman was assigned an IE who interviewed Coleman's witnesses

4

utilizing questions drafted by Coleman, and all of the witnesses' statements were stipulated into evidence at the RVR hearing; and 3) the RE was available for questioning during the hearing as requested. Finally, the Warden upheld the SHO's finding that Coleman was guilty of the charged offenses. The Warden found, however, that the SHO had made two typographical errors. Contrary to the SHO's findings, Coleman was a participant in the Mental Health Delivery System and the SA was present during the disciplinary process, but the SHO concluded that "these two minor typos did not violate [Coleman's right to] due process."

Coleman then appealed to the Director of the Divisions of Adult Institutions, Inmate Appeals Branch, for a Director's Level of Review ("DLR"). Coleman appears to have raised the same arguments that he raised in the SLR. His DLR was denied:

> The DLR finds that [Coleman] has not presented any compelling evidence to refute that he exercised constructive possession over the marijuana as it was found in a bucket which [he] had checked out from staff and [Coleman] admitted to Correctional Sergeant (Sgt.) Lee that the clothes in the bucket were his. The DLR notes that [Coleman] denies that he made this statement to Sgt. Lee; however, during the RVR hearing Sgt. Lee attested that [Coleman] made this statement. The DLR concedes that there may have been two buckets in the housing unit which were labeled number one; however, [Coleman] admitted that he checked out a bucket labeled number one and he placed it in the restroom and placed his clothes inside of it. The location of the other bucket is irrelevant. The DLR notes the typographical errors by the SHO and which were corrected by the SLR. These errors do not impact [Coleman's] ability to present a defense. The DLR notes that [Coleman] attempts to impugn the integrity of the SHO and allege that he lied because he mistakenly documented that [Coleman's] SA was not present at the RVR hearing. [Coleman's] statement, and the evidence, indicates that the SA was present at the RVR hearing and the SHO's typographical error does not demonstrate that he was lying. The DLR acknowledges that [Coleman] is in the MHSDS at the Correctional Clinic Case Management System (CCCMS) level of care and the RE failed to document this on the RVR; however, [Coleman] did not claim that his behavior was influenced by mental illness which would warrant completion of a mental health assessment. The DLR finds that the charge of distribution is appropriate based upon the packaging of the marijuana in that 12 separate bindles were discovered. The DLR notes that marijuana has a high monetary value and it is unlikely that another person placed the marijuana in the bucket and a reasonable person would concluded that [Coleman] was aware of the marijuana and exercised constructive possession over it. The DLR

concludes that [Coleman] has not presented any meaningful information that would warrant dismissing or modifying the RVR. Therefore no relief is provided by the DLR.

Coleman filed a petition for writ of habeas corpus with the superior court, arguing that: 1) there was a second bucket labeled number one; 2) he was denied the opportunity to test the evidence for fingerprints and DNA; 3) he should have been given a psychological examination or provided with an SA before he was questioned about the incident; 4) the SHO denied him the opportunity to call witnesses; and 4) the evidence did not establish that he had constructive possession of the bindles of marijuana.

Citing *Superintendent v. Hill*, 472 U.S. 445, 447 (1985), the superior court rejected Coleman's sufficiency of the evidence claim, concluding that the decision of the SHO was supported by "some evidence" in the record, and likewise rejected Coleman's due process claims.

Coleman then filed a petition for a writ of habeas corpus with the Court of Appeal, raising the same arguments raised in his petition to the superior court. The Court of Appeal summarily denied Coleman relief. Coleman filed a petition with the California Supreme Court raising the identical claims he raised in his previous petitions. The California Supreme Court summarily rejected review. Coleman filed his Petition with this Court on August 9, 2012, and Respondent concedes that it is timely.

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Coleman argues that: 1) he was denied the opportunity to test the clothing found in the bucket with the contraband for fingerprints and DNA; 2) he should have been provided with an SA before he was questioned about the incident;

3) the SHO denied him the opportunity to call three witnesses; and 4) the evidence was not sufficient to establish his guilt.

### III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004)

(citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)).  Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

The Fourteenth Amendment to the Constitution provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV, § 1.  It is well settled that a prisoner charged with violating a prison regulation which could result in the loss of good time credit is entitled to minimal due process protections, but is not entitled to the full panoply of rights afforded a criminal defendant.  *Wolff v. McDonnell*, 418 U.S. 539, 556, 563-65 (1974).  When an inmate in state custody faces a disciplinary proceeding that may result in the loss of good time credit, procedural due process requires that the inmate receive: 1) 24 hours' advance written notice of the disciplinary charges; 2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; 3) assistance at the hearing if the inmate is illiterate or the issue is complex; 4) a fair and impartial factfinder; and 5) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.  *Hill*, 472 U.S. at 445; *Wolff*, 418 U.S. at 563-70.  Finally, the decision rendered on a disciplinary charge must be supported by "some evidence."  *Hill*, 472 U.S. at 455.  In *Hill*, the United States Supreme Court explained that "[a]scertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."  *Id*. at 455-56.  The "some evidence" standard

"does not require courts to set aside decisions of prison administrators that have some basis in fact," and the existing evidence need not outweigh evidence to the contrary or preclude other conclusions. *Id.* at 456-57.

### Sufficiency of the evidence

Coleman argues that the evidence did not support the SHO's determination that he was guilty of possessing and distributing a controlled substance because there were two buckets labeled number one and he had a medical condition which prevented him from passing the field sobriety test. Nevertheless, the superior court's conclusion on state habeas review that the SHO's determination was supported by some evidence is not unreasonable or contrary to federal law. Coleman checked out a bucket labeled number one on the morning of May 5, 2010, and placed it in the bathroom. Officer Herrera, witnessed by Officer Burch, found marijuana in bucket number one, and the marijuana was packaged in individual bindles for distribution. Coleman spontaneously stated that he had a t-shirt and shorts in his bucket, and the bucket containing marijuana also contained socks and a t-shirt, among a few other items. Coleman exhibited signs of intoxication and refused a urinalysis test. Looking at the facts before the SHO, there was indeed "some evidence" to support his convictions for possession and distribution of marijuana. Although Coleman points to contradictory evidence—namely, that there were allegedly two buckets labeled number one and that he had a medical condition which prevented him from passing the field sobriety test—the SHO's determination had some basis in fact, and the evidence presented need not preclude conclusions other than that reached by the SHO. *Id.* at 456-57. Coleman thus cannot prevail on his claim that the evidence was not sufficient to support the SHO's findings.

Not allowed to test evidence for fingerprints or DNA

Coleman next argues that he was denied the opportunity to test the clothing for fingerprints and DNA. The hearing report indicates that Coleman asked to take a polygraph test and asked that the clothing found in the bucket be evaluated to determine if it was his size, but it does not indicate that he requested fingerprint or DNA testing of the clothing. In any event, the superior court rejected this claim on habeas review, concluding "no law or regulation gives [Coleman] the right to DNA or fingerprint evidence." The superior court's conclusion was not unreasonable or contrary to federal law, as courts "confronting due process claims based on prison officials' denial of requests for fingerprinting and other scientific analyses have concluded that the minimal procedural guarantees prescribed by *Wolff* do not encompass a right to have evidence tested for fingerprints or subjected to similar scientific analyses." *Barboza v. Kelsey*, No. 03-3855, 2008 WL 2512785, at *11 (C.D. Cal. June 23, 2008); s*ee also Freitas v. Auger,* 837 F.2d 806, 812 n.13 (8th Cir. 1988) (inmate not entitled to take a polygraph examination addressing whether he participated in planning or furthering an escape); *Flanagan v. Warden, U.S. Penitentiary,* 784 F. Supp. 178, 180-81 (M.D. Pa. 1992), *aff'd, Flanagan v. Warden, USP-Lewisburg,* 6 F.3d 779 (3d Cir. 1993), *cert. denied,* 510 U.S. 1099 (1994) (inmate "had no constitutional right to the grant of his request for 'scientific' [fingerprint] testing to establish non-ownership of the weapon" found in his locker); *Hamilton v. Scott,* 762 F. Supp. 794, 802 (N.D. Ill. 1991), *aff'd, Hamilton v. O'Leary,* 976 F.2d 341 (7th Cir. 1992) ("There is simply no due process right for [the inmate] to demand" that a weapon found in his cell be dusted for fingerprints.); *Hill v. Buss,* No. 3:06-CV-033, 2006 WL 3775981, at *1 (N.D. Ind. Dec. 19, 2006) ("[A]n inmate is not constitutionally entitled to [fingerprint] testing [of a weapon found in

his cell] as a part of a disciplinary hearing."); *Lian v. Holt,* No. 4:CV-05-2503, 2006 WL 1000026, at *3 (M.D. Pa. Apr. 13, 2006) (The "failure of [prison] officials to dust for fingerprints on the confiscated packet confiscated from [the petitioner's] cell or conduct a more detailed investigation into the origin of the anonymous dropped note did not violate the [p]etitioner's due process rights.") (internal footnote omitted); *Liebers v. Clarke,* No. 4:03CV3322, 2005 WL 2347270, at *3 (D. Neb. Sept. 26, 2005) ("[T]he court finds no basis in the Constitution to require the State of Nebraska to use polygraphs and fingerprinting techniques in prison disciplinary investigations, even at an inmate's own expense."). Assuming Coleman did request that the clothing be tested for fingerprints and DNA, such a request goes beyond the bounds of a request to compile and present documentary evidence and is tantamount to a request to conduct his own investigation. As Coleman has cited to no law indicating that he was entitled to such testing, he cannot prevail on this claim.

<u>Not granted an SA prior to interrogation</u>

Coleman next argues that he should have been granted the assistance of an SA prior to being questioned about the incident because he did not understand why he was implicated and he "became frustrate[d] with anxiety" and his "mental perception was distorted." The superior court found that Coleman failed to state a prima facie case for relief because he did not cite to any authority in support of his claim that he was entitled to an SA prior to being questioned about a rule violation. The court further found that Coleman had failed to establish prejudice.

In *Wolff*, the United States Supreme Court held that there is no right to counsel in a prison disciplinary hearing, but where an inmate is illiterate or "the complexity of the issue makes it likely that the inmate will be able to collect and present the evidence necessary for an

adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or . . . to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff." 418 U.S. at 570. Coleman has not alleged that he was illiterate, and the issue was not complex: Officer Herrera found marijuana in a laundry bucket that was checked out to Coleman. On these facts, Coleman does not fall into either scenario envisioned by the Supreme Court where due process might require the assistance of a counsel substitute. Further, although Coleman might not have received assistance during questioning about the alleged violation, he received assistance in investigating the violation, and an SA was present during the hearing itself. Moreover, Coleman cannot established that, even if the issue was complex to him in light of his alleged mental health issues, that he was prejudiced. Prior to questioning, Officer Holyfield advised Coleman of his *Miranda* rights. Coleman unequivocally stated, "I want an attorney," and questioning ceased.[3] Because he was lucid enough to invoke his rights and he was not, in fact, questioned without an assistant, he cannot establish that the institution's failure to provide him with an SA prejudiced him in any way. Coleman is thus not entitled to habeas relief on this claim.

Not afforded the right to call witnesses

A prisoner does not have an absolute right to present witnesses at a disciplinary hearing. *Baxter v. Palmigiano*, 425 U.S. 308, 321 (1976) ("The right to call witnesses . . . is thus

---

[3] Coleman was read his *Miranda* rights, in which he was informed of the right to counsel, even though the United States Supreme Court has held that an inmate is not entitled to counsel in a prison disciplinary hearing. However, prison officials referred the case to the Solano County District Attorney's Office for possible prosecution, which might explain why they read Coleman his full panoply of rights. In any event, Coleman's invocation of the *Miranda* right to counsel communicated to prison officials that he refused to speak to them about the allegations.

circumscribed by the necessary mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." (internal quotations omitted)). The United States Supreme Court has held that the right to call witnesses is a limited one, available to the inmate "when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. "Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence." *Id.* "[T]he Court's concern is that an inmate will intimidate or coerce defense witnesses into testifying falsely, and that a witness who goes to officials to disclose such threats will be the target of retaliation if a disciplinary board announces that 'institutional safety' precludes it from hearing the witness." *Ponte v. Real*, 471 U.S. 491, 514 (1985) (footnote omitted). Other valid bases for the denial of witnesses would include irrelevance, lack of necessity, and additional hazards particular to each case. *Wolff*, 418 U.S. at 566-67.

Here, the SHO denied Coleman's request to call Correctional Officer Burch, who was present while Herrera searched the buckets, as well as Inmate Walker, on the ground that their statements to the IE had been entered into evidence. The SHO further denied Coleman's request to call inmate Evans based on "security concerns" as well as the fact that Evans' statements had also been admitted into evidence. Coleman argued in his petition for habeas relief to the superior court that he was denied the right to due process in not being permitted to call these witnesses to testify at his disciplinary hearing, but the superior court denied him relief on the ground that he could not show prejudice.

13

The superior court's conclusion was not unreasonable or contrary to federal law.  Prison officials have the discretion to exclude witnesses for security reasons, *Wolff*, 418 U.S. at 566, and may also exclude witnesses to keep the hearing within reasonable time limits or prevent superfluous or repetitive testimony, *Ponte*, 471 U.S. at 499.  The SHO thus acted well within his discretion in excluding Burch, Evans, and Walker.  In any event, the SHO admitted the transcripts of the IE's interview of these witnesses, in which the IE asked questions drafted by Coleman.  Because Coleman had no constitutional right to cross-examine the witnesses had they been called to testify, he was not prejudiced by their exclusion.  *See Wolff*, 418 U.S. at 567-68.  He therefore cannot prevail on the claim that the exclusion of these three witnesses violated his right to due process.

## V. CONCLUSION AND ORDER

Coleman is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain

a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

      The Clerk of the Court is to enter judgment accordingly.

      Dated: December 4, 2014.

                                    /s/James K. Singleton, Jr.
                                 JAMES K. SINGLETON, JR.
                                 Senior United States District Judge